IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


Josh L. Anderson,
   plaintiff,

V.                                      CIVIL ACTION NO. 04-135 Erie

Larry E. Kopko, Randy J. Ickert
and Katie L. Smith,
   defendants.

RECEIVED

MAY 2 2 2006

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

## PLAINTIFF'S SECOND AMENDED COMPLAINT

This is a Civil Action authorized by **42 U.S.C. Section 1983** to redress the deprivation under Color of State Law, of rights secured by the Constitution of the United States. The court has jurisdiction under **28 U.S.C. Section 1331** and **1343 (a)(3)**. The Western District of Pennsylvania is appropriate venue under **28 U.S.C. Section 1391 (6)(2)** because it is where the events giving rise to this claim occurred.

### I. PLAINTIFF

1. Plaintiff: Josh L. Anderson, was at all times mentioned herein a prisoner of the State of Pennsylvania in the custody of the Warren County Prison. He is currently confined in SCI Coal Township, 1 Kelley Drive, Coal Township, PA 17866-1021.

### II. DEFENDANTS

1. Defendant: Larry E. Kopko, is the Sheriff/Warden of the County of Warren, State of Pennsylvania. He is responsible

for the overall operation of the Department of Sheriff and the institution under its jurisdiction, including the Warren County Prison.

2. Defendant: Randy J. Ickert, is the Captain/Correctional Supervisor of the Warren County Prison. He is responsible for the operation of the Warren County Prison and for all the inmates in that Prison.

3. Defendant: Katie L. Smith, is a Deputy Sheriff/ Correctional Officer of Warren County, who at all times mentioned in this complaint held the rank of "Correctional Officer" and was assigned to the Warren County Prison.

4. Defendants Kopko and Ickert were dismissed on January 6, 2006 per order of the court.

5. Defendant Smith is sued in her Official Capacity and as an Individual. At all times mentioned in this complaint defendant Smith acted under Color of State Law.

### III.   F A C T S

1. On February 4, 2004, at approximately 0930 hours while Officer Breon was in A-Maximum handing out money receipts, I observed Sergeant Burns, Officers Lehnen, Curtis and Smith returning from the area (to my belief) seven door. Sergeant Burns, Officers Lehnen, Curtis and Smith continue through the area to the six door where Officer Smith remained while Sergeant Burns, Officers Lehnen and Curtis continue through. While Officer Smith stood at the six door she began to stare at me. I walked out of the block and up to Officer Smith and asked "do you like what you see" to wit she sarcastically responded "no."

2. I returned to the block and informed Officer Breon that I did not wish for Officer Smith to return when lunch is served because I was afraid she would try to provoke a confrontation as she often did. Officer Breon told me that he could not control if she comes down or not. Officer Breon left the block and I watched TV till approximately 1230 hours.

3. At approximately 1230 hours, Officers Dipenti, Breon and Smith came to the first floor of the Warren County Prison to serve lunch. [The area of the first floor that houses inmates consists of two (2) cell blocks, A-Maximum and A-Minimum, as well there are two (2) Isolation cells and one (1) Detox cell] Officers Dipenti and Breon came into A-Maximum while Officer Smith remained in the hallway that access A-Minimum, Detox and the two (2) Isolation cells to assist in serving the inmates housed there.

4. After serving said inmates Officer Smith entered the guard station of A-Maximum and stood in front of the medication cart and began to stare at me. As Officer Smith stood there I noticed that she had removed her jacket and placed a can of Oleoresin Capsicum (O.C.) in her back left pants pocket.

5. I walked over to the door that leads into the guard station of A-Maximum to confront Officer Smith again. As I reached the door Officer Dipenti jumped in front of me and putting his hand on my chest stated "if you push back I will take you down," I was pushed back about five (5) feet to cell 140. Officer Dipenti tried to push me again but because my back was against the gate of cell 140 I did not move. Officer Dipenti grabbed a hold of me, Officer Breon came into assist and I was taken down without any resistance.

6. While on the floor, handcuffed and held down by Officers Dipenti and Breon, Officer Smith entered the block and stood approximately three (3) feet away from my face under an observation camera smiling in enjoyment by what was happening to

(3)

me. I was so unsettled by what just happened and her attitude about it, I tried to spit on her but missed.

7. Officer Smith took a step in reaction to nearly being spat upon, paused briefly then lunged forward kicking me in the mouth with her left boot. She then dropped to her knees, punched me on the left side of the face with a closed fist, grabbed a hold of my head and started to beat it off the floor while repeatedly calling me an "ass hole."

8. Officer Dipenti ordered Officer Smith to "back off." Sergeant Burns, Officers Lehnen and Curtis responded followed by Captain Ickert and I was moved to the Detox cell. I advised Captain Ickert that I had been assaulted by Officer Smith and I wanted to file charges, Captain Ickert told me he had to speak to Sheriff Kopko to find out if the Sheriff's Department could handle the case or another department would. While I spoke with Captain Ickert I was striped of all my clothing and placed in a suicide smock. The handcuffs were left on and I was left in a cell that was cold and dirty with a swollen bleeding lip, headaches and the fear of more assaults by Officer Smith or other Officers of the Warren County Prison.

9. On or about February 6, 2004, while in the detox cell Sergeant Filla and Officer Hukill opened the door and informed me that I needed to be placed in a transport belt and shackles because a Doctor needed to see me. I allowed the transport belt and shackles to be applied so I could see the Doctor.

10. As the Doctor came in I noticed that he was not the jail's Doctor and was carrying a tray that held vacuum tubes and needles that are used to draw blood. I asked the Doctor what he wanted and he told me he was here to give me an HIV test. I told him I did not want one and Sergeant Filla told me I had to because I spit in Officer Smith's face. I told her that I did not

spit in her face and I was not going to be tested. Sergeant Filla and Officer Hukill held me down so the Doctor could take a tube of blood.

11. Officer Smith and I have experienced a large number of problems ranging from her telling me that I'm stupid, dirty, have bugs, that she could beat my ass, that I did not deserve to be a father, to threatening to shoot me if she ever saw me in society. These problems have continued over a two (2) year period. I have made every effort available to me in an attempt to try to put an end to this ongoing problem.

12. I have made in upwards of one-hundred attempts to speak with Officer Smith. These attempts included making requests in writing to speak with her, speaking with other Officers and asking Officer Smith herself if her and I could talk and try to find out why she stares at me and why she finds it amusing when I get upset.

13. Most of the attempts I made to speak with Officer Smith were met with a response of "I'm not a counselor, if you need someone to talk to put in a request slip" or "I have nothing to say to you" and when asked why she states "I don't want to talk to you."

14. I have even gone as far as apologizing for my contribution to our ongoing problems. Officer Smith has always responded with "I don't care" and when asked if she even believed me she responded "no, I don't believe a word you say."

15. On several occasions Officer Smith and I have spoke and because of her hostility and unwillingness to converse with me it ended with her and I yelling and making threatening remarks.

16. For Example: December 29, 2003, approximately 1530 hours Officer Smith came to my cell (137 Isolation) opened the outer door and sarcastically asked how I was doing. Officer Smith and I spoke for a few minutes, I expressed to her that her actions and attitude have caused me to grow to hate her. Officer Smith slammed the door and left. At approximately 1800 hours Officer Smith returned to my cell and told me I had a visit. Officer Smith proceeded to apply a transport belt and shackles to my hands and feet, I informed Officer Smith that the handcuffs were too tight and causing me pain, but she ignored me.

17. While on the visit I told my mother about what had happened and she went to speak with someone about it. My mother spoke with Sergeant Burns and Officer Smith about why my handcuffs were so tight. Sergeant Burns came into the inmate side of visiting and loosened the transport belt and handcuffs while my mother continued to speak with Officer Smith about why she treats me the way she does. Officer Smith told my mother "I have to act like a bitch or they won't respect me." Sometime afterwards Officer Smith was instructed on how to properly apply restraints.

18. Members of my family have called the Jail to speak with Captain Ickert and the Jail Counselor Laura M. McDunn to find out why Officer Smith and I were allowed to be around each other if there was so many conflicts between her and I. My mother was told the same by each person "he is in an area that a female needs to work", I believe this is because of A-Minimum which housed female inmates.

19. There are many documented conflicts between Officer Smith and myself from 2002 to February 4, 2004, some of which have ended in Criminal Charges against me and always made to look one sided and isolated. Never has Officer Smith received any form of discipline for her role in the altercations.

20. It is plaintiff's belief that Officer Smith acted with the intent to terrorize, harass and place plaintiff in an constant fear manifesting into a form of paranoia and that the actions taken by Officer Smith were allowed and encouraged by her fellow Officers and Supervisors.

21. It is also plaintiff's belief that this allowed Officer Smith to believe her actions to be a part of normal operational procedures of the Warren County Prison.

### IV. EXHAUSTION OF LEGAL REMDIES

1. Plaintiff, Josh L. Anderson, used the prisoner grievance procedure available at the Warren County Prison to try to solve the problem.

2. On the 26 day of February 2004, plaintiff sent a letter to Sheriff/Warden, Larry E. Kopko.

3. On the 4 day of March 2004, plaintiff filed a grievance relating to the facts in this complaint.

4. On the 14 day of March 2004, plaintiff sent a letter to the Warren County District Attorney, Richard Hernan, stating the same facts giving rise to this claim, all in an effort to file a Private Criminal Complaint.

5. On the 21 day of March 2004, plaintiff again sent a letter to Sheriff/Warden, Larry E. Kopko, asking why nothing was being done and again stating plaintiff's wish to file Criminal Charges against defendant Smith.

## V. LEGAL CLAIMS

Defendant Katie L. Smith deprived plaintiff of the rights and privileges guaranteed by the Constitution and Laws of the United States when she:

1. Used Excessive Force.

2. Sexually Harassed plaintiff through Excessive Surveillance (starring).

3. Claims 1-2 left plaintiff with Substantial Emotional Distress and Fear, constituting Cruel and Unusual Punishment under the Eighth Amendment of the Constitution of the United States.

## VI. RELIEF

Plaintiff has no plan, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has and will continue to be irreparably injured by the conduct of defendant Smith.

**WHEREFORE**, plaintiff prays that this Honorable Court enter Judgement granting plaintiff:

1. A declaration that acts, and omissions described herein, violated plaintiff's rights under the Constitution and Laws of the United States.

2. A jury trial on all issues triable by jury.

3. Plaintiff's cost in this suit.

4. Compensatory Damages.

5. Consequential Damages.

6. Exemplary Damages.

7. Any additional relief this Court deems just, proper and equitable.

Respectfully Submitted,

JOSH L. ANDERSON [Pro Se]
Inmate# FW-6915
1 Kelley Drive
Coal Township, PA 17866-1021

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Josh L. Anderson,
   plaintiff,

V.                                          CIVIL ACTION NO. 04-135 Erie

Larry E. Kopko, Randy J. Ickert
and Katie L. Smith,
   defendants.

**VERIFICATION**

     The undersigned Josh L. Anderson, states that he is the plaintiff in the above action, and has read the forgoing Complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, believes to be true and correct.

_____
JOSH L. ANDERSON

(10)